**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**KEVORKIAN GRACE** **PLAINTIFF**

**VERSUS** **CIVIL ACTION NO. 5:25-cv-00053-DCB-BWR**

**WARDEN T. DELANEY** **DEFENDANT**

**REPORT AND RECOMMENDATION**

Pro se Plaintiff Kevorkian Grace[1] is an inmate housed at the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi. Compl. [1] at 2. His claims arise under 42 U.S.C. § 1983, and he names Warden T. Delaney as Defendant. *Id.* at 2, 4. Plaintiff is proceeding *in forma pauperis*. Order [6]. On April 13, 2026, Defendant filed a Motion [15] for Partial Summary Judgment, and Plaintiff filed a Response [18] on May 1, 2026. For the following reasons, the undersigned recommends that the Motion [15] for Partial Summary Judgment be denied without prejudice. Given the disputed issues of material fact discussed below, the undersigned recommends that the Court either (1) conduct an evidentiary hearing on the issue of exhaustion of administrative remedies, or (2) proceed to a determination of the merits of this case, if Defendant elects to waive the defense of exhaustion of administrative remedies.

[1] Plaintiff jointly filed this lawsuit with another inmate named Joseph Archer. Compl. [1] at 2-3. On June 18, 2025, the Court terminated Archer as Plaintiff, and his claims are separately being heard in *Archer v. Delaney*, No. 5:25-cv-00054-DCB-BWR (S.D. Miss.).

# I. BACKGROUND

## A. Plaintiff's Allegations

Plaintiff raises two claims about the conditions of his confinement at WCCF. First, Plaintiff claims that he is "being housed in an unsanitary environment." Compl. [1] at 4. Allegedly, WCCF suffers from "serious deficiencies in plumbing," including "ping-pong toilets," meaning that sewage from one cell backs up into another cell when a toilet is flushed. *Id.* (quotation omitted). Plaintiff allegedly reported the malfunctioning toilets, but he was advised that it could not be fixed without a facility-wide plumbing overhaul. *Id.* at 9. Nonetheless, Plaintiff was "denied . . . a transfer to another cell, unit, or prison." *Id.*

As a result of this condition, Plaintiff "constantly ha[s] to jump up [and] flush [the] toilet," which has disrupted his "sleep and eating habits." Compl. [1] at 8. Plaintiff's medical providers have increased his medication "to keep [the] anxiety level down and to keep depression at bay." *Id.* He also claims to have contracted "herpes since coming in[to] contact with sewage water in [the] toilet," and he constantly worries about "the risk of infection." *Id.* at 10. For this claim, Plaintiff seeks $25,000.00 in damages "due to being housed in such disgusting conditions for a long period of time." *Id.* at 8. He also asks the Court "to have [him] transferred to a better operating facility." *Id.* at 11.

Second, Plaintiff claims that he is denied adequate outdoor and recreational time at WCCF. Compl. [1] at 7. Plaintiff reports that he is typically housed in his

cell for 23 hours per day, and he cannot "properly exercise in [his] cell." *Id.* Plaintiff complains that he only receives one hour of gym time per week, plus "wreck [*sic*] call one or twice a month." *Id.* Plaintiff goes on to complain that his weekly gym time does not afford "direct sunlight and fresh air." *Id.*

Plaintiff claims this condition has "caus[ed] [his] mental [and] physical health to decline." Compl. [1] at 7. He suffers from Lupus, which requires "an exercise regimen," so Plaintiff is "constantly aching and locking up in pain" from the lack of movement. *Id.* at 10. Plaintiff complains that he must now take "prednisone . . . to prevent pain from [his] joints [and] bones." *Id.* at 8. For this claim, Plaintiff seeks $20,000.00 in damages. *Id.* at 11.

**B. Summary Judgment Evidence**

Defendant attached the affidavit of Sherry Rowe as an exhibit to his Motion [15] for Partial Summary Judgment. Mot. [15-1] at 1-2. Rowe testified that she is "the Grievance Coordinator" at WCCF. *Id.* at 1. In that capacity, she serves as "the custodian of the [Administrative Remedy Program] files at WCCF and [is] responsible for . . . oversight and management of the processing of inmate grievances . . . at WCCF." *Id.* The grievance process consists of two steps, which Rowe described thus:

> Inmates are required to initially submit their grievances in writing through the grievance system within thirty days of the complained-of incident. If a grievance is accepted into the ARP process after initial screening by the Statewide ARP Director, the request is forwarded to the appropriate official, who will issue a first step response. If the inmate is unsatisfied with the first step response, he may continue to the second step within five days after receiving the first step response. If the inmate is not satisfied with the second step response, he may then

file suit in state or federal court.

*Id.* Rowe testified that she "reviewed the records and information maintained in the ARP files at WCCF" and identified six grievances that Plaintiff had filed. *Id.* at 2. Rowe further testified that Plaintiff had "not submitted any other grievances through the ARP process other than those" described below. *Id.*

Four of Plaintiff's six grievances are unrelated to the allegations described in this lawsuit, including grievances numbered WCCF-25-46 (seeking transfer to another facility), WCCF-25-80 (asking that a correctional officer be removed from the facility), WCCF-25-134 (regarding medical care), and WCCF-26-44 (appealing a disciplinary finding). Mot. [15-1] at 3-17, 29-33, 41-50. The other two grievances concern the allegedly unsanitary living conditions.

In Plaintiff's grievance numbered WCCF-25-106, he sought "to have the plumbing fixed immediately even if the cells have to be labeled as condemned until [the] problem is fixed." Mot. [15-1] at 20. Plaintiff advised that the toilet in his cell "is constantly receiving backflow . . . from the cell next door." *Id.* Plaintiff received first- and second-step responses to this grievance, *id.* at 22-24, ultimately learning that "the Flush Valve was replaced on [his] toilet," *id.* at 24.

In Plaintiff's grievance numbered WCCF-25-169, Plaintiff sought "to receive cell sanitation at least 3 times a week accommodated with new brooms, [a] new mop, chemicals from [an] actual container, [and a] toilet brush." Mot. [15-1] at 36. He reported that "floor walkers . . . clean [the] zone . . . but don't go cell to cell with

[cleaning] chemicals." *Id.* In the first-step response, Plaintiff was advised that "chemicals and cleaning equipment are on the unit every day" and that it was his "choice to use them or not." *Id.* at 38. It does not appear that Plaintiff proceeded to the second step with respect to this grievance. *Id.*

In Response [18] to Defendant's Motion [15] for Partial Summary Judgment, Plaintiff submits that he filed a grievance on January 14, 2025, about the denial of outdoor recreation. Resp. [18] at 2. The grievance purportedly filed on January 14, 2025, is attached as an exhibit to Plaintiff's summary-judgment Response and reads like this:

> I'm writing on the behalf of the staff here violating our eighth amendment by denying us 5 hrs minimal weekly of outside recreation and exercising. I've been housed here at WCCF since Dec. 5, 2024 up until now and in between times, I've only received 3 gym calls but no outside recreation which consists of sunlight and fresh air. We don't receive nothing but 1 hour tier calls and there is no exercise equipment on the zones. The 1 hr tier calls consist of showers [and] maybe 1 phone call if the phones aren't full. I can't properly exercise in my cells, which I'm placed in for 23 hrs a day and sometimes as in today which is Jan. 14, 2025, 24 hrs a day. I've been caged in my cell more then [*sic*] I've been let out of it. This is closed custody/general population not admin. segregation. This is unconstitutional.

Exh. [18-1] at 1. Plaintiff sought "to be housed at another facility where [he] can receive proper exercise for [his] health conditions [and] not [be] caged like an animal." *Id.*

"Despite submitting the grievance," Plaintiff claims that he "did not [receive] a response, nor was the grievance processed through the . . . ARP." Resp. [18] at 3. He claims that "the absence of [this] grievance in the prison's records does not prove

that Plaintiff failed to submit [it]." *Id.* "Instead," he claims that "it demonstrates a failure by prison staff to properly process or maintain Plaintiff's grievance." *Id.* As a result, Plaintiff claims that "the administrative remedy process [was] unavailable to [him]" with respect to his outdoor-recreation claim. *Id.*

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id.* at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence

of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id.* (quotation omitted).

## III. DISCUSSION

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (per curiam) (quotation omitted). "Exhaustion is mandatory for 'all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (per curiam); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act," or PLRA. *Id.* A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

"The exhaustion requirement hinges on the availability of administrative

remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at *1 (S.D Miss. Mar. 1, 2021) (quotation and brackets omitted). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation and brackets omitted). An administrative procedure is unavailable where: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) it is "so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016).

Based on the evidence before the Court, the undersigned is of the opinion that genuine disputes of material fact preclude the entry of summary judgment on the exhaustion issue right now. Namely, did Plaintiff submit or attempt to submit a grievance on January 14, 2025, about the lack of outdoor recreation time? If so, did prison officials fail to process Plaintiff's January 14, 2025, grievance about the lack of outdoor recreation time? *See* Resp. [18] at 3.

Rowe testified by affidavit that Plaintiff did not submit "any other grievances through the ARP process other than" the six grievances described above. Mot. [15-1] at 2. Plaintiff flatly refutes her testimony, insisting that he submitted a grievance about the lack of outdoor recreation time that his custodians refused to process. Resp. [18] at 3. Of course, Plaintiff's prior consistent use of the grievance procedure

indicates that avenues of administrative relief were available to him during the relevant time. *See, e.g.*, *Ray v. Harrison Cnty., Miss.*, No. 1:24-cv-00295-RPM, 2026 WL 194364, at *6 (S.D. Miss. Jan. 26, 2026). And Plaintiff's unsworn statements are not competent summary-judgment evidence. *See Mims v. General Motors*, No. 3:09-cv-00617-DPJ-FKB, 2011 WL 4454932, at *2 (S.D. Miss. Sept. 23, 2011) ("[A] *pro se* litigant may not rely on [his] own unsworn statements appearing in [his] response."). But it is "unclear" whether Plaintiff may use the unauthenticated grievance dated January 14, 2025, to defeat summary judgment. *See Pinkston v. MTC*, No. 3:22-cv-00152-KHJ-MTP, 2023 WL 1861215, at *4 (S.D. Miss. Feb. 9, 2023).[2]

Thus, the Court must evaluate the evidence and make credibility determinations before deciding the exhaustion issue. "The Fifth Circuit has explained the process by which courts may make credibility determinations in ruling on exhaustion." *Stewart v. Rushing*, No. 3:11-cv-00788-LRA, 2013 WL 5423960, at *2 (S.D. Miss. Sept. 26, 2013) (citing *Dillon*, 596 F.3d at 272-73). "If the prisoner survives summary judgment because factual issues remain concerning exhaustion,

[2] "Rule 56(c) provides that documents in inadmissible form may be considered as competent summary judgment evidence if the proponent demonstrates the document could be put into admissible form for trial. . . . Today, the rule provides that, when a party fails to offer evidence in admissible form at the summary judgment stage, the opposing party may object by stating the evidence cannot be presented in a form that would be admissible in evidence." *Hernandez v. Allstate Vehicle and Prop. Ins. Co.*, No. 1:24-cv-00086, 2025 WL 1485872, at *4 (S.D. Tex. Apr. 22, 2025) (quotations, emphases, and citations omitted); *see also Rivet v. Toyota Motor Sales, USA, Inc.*, No. 17-11151, 2018 WL 948667, at *2 (E.D. La. Feb. 20, 2018); *El-Bawab v. Jackson State Univ.*, No. 3:11-cv-00553-DPJ-FKB, 2013 WL 3884128, at *10 (S.D. Miss. July 26, 2013). Defendant has raised no objection to the use of Plaintiff's unauthenticated grievance, so the undersigned will not pass on the question of its admissibility as evidence at this time. *See Pinkston*, 2023 WL 1861215, at *4.

the court may resolve the disputed facts by allowing discovery or holding an evidentiary hearing." *Id.* "That resolution should occur before reaching the merits of any of the substantive claims." *Id.* Or Defendant "may choose to waive the issue of exhaustion and proceed to litigation of the merits of [P]laintiff's claims." *Coleman v. Lauderdale Cnty.*, No. 3:22-cv-00621-TSL-RPM, 2024 WL 1333046, at *4 n.10 (S.D. Miss. Mar. 28, 2024).

Having concluded that summary judgment is not appropriate on the present record, the undersigned recommends that Defendant's Motion [15] for Partial Summary Judgment be denied without prejudice. The undersigned recommends the Court set a deadline for Defendant to make his election—either proceed to an evidentiary hearing to resolve the disputed fact issues, or waive the defense of exhaustion of administrative remedies and proceed to a determination of the merits. *E.g.*, *Magee v. Harris*, No. 2:16-cv-00172-KS-MTP, 2017 WL 3773985, at *3 (S.D. Miss. June 22, 2017), *report and recommendation adopted by*, 2017 WL 3725986, at *1 (S.D. Miss. Aug. 29, 2017); *Stewart*, 2013 WL 5423960, at *3. Any evidentiary hearing could be conducted by the undersigned pursuant to the Order [17] of Referral (requiring the undersigned to "[conduct] hearings and [submit] to the District Judge assigned to this case proposed findings of fact and recommendations for the disposition of this case").

## IV. RECOMMENDATION

The undersigned recommends that Defendant Warden T. Delaney's Motion

[15] for Partial Summary Judgment be denied without prejudice. The undersigned recommends that the Court establish a deadline for Defendant Warden T. Delaney to make an election—either proceed to an evidentiary hearing to resolve the issue of exhaustion of administrative remedies, or waive the exhaustion defense and proceed to a determination of the merits.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L. U. CIV. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive more evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge will be barred, except

upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 20th day of October, 2026.

s/ *Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE